IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Stefan Jerrod Lee, aka Stefan J. Lee, )<br>   ) <br>Plaintiff,   )<br>   )<br>v.   )<br>   )<br>   )<br>Steve Pruitt, Major, individually and   )<br>official capacity; James Singleton,   )<br>Sheriff, individually and in his official   )<br>capacity, and County of Oconee,   )<br>as a person,   )<br>   )<br>Defendants.   )<br>_____) | Civil Action No. 8:08-1626-RBH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment. [Doc. 32.] The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs and that they have denied him meaningful access to the courts.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A pro se complaint, "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (U.S. 1976). A court may not construct the petitioner's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

2

> that there is no genuine issue as to any material fact and that
> the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are

insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

The plaintiff has pled two claims pursuant to 42 U.S.C. § 1983. The first is for a violation of his Eighth and Fourteenth Amendment constitutional rights when the defendants were allegedly deliberately indifferent to injuries he suffered during an assault by other inmates. The second claim is for denial of access to the courts. The Court will address each in turn.

**I.     Deliberate Indifference Claims**

The plaintiff first argues that the defendants failed to treat injuries which he suffered while housed at the Oconee County Detention Center ("OCDC"). The plaintiff was assaulted on the initial day of his incarceration, February 20, 2008, by other inmates. It is undisputed that the altercation was stopped by the guards present, and the plaintiff does not appear to allege any claims for the assault itself. (See generally Complaint at 4 ("Plaintiff had no intention of suing Defendants for the assault . . . .") & Resp. Summ. J.) The plaintiff contends that he suffered black eyes, a swollen face, knots on his head and face, a dislocated shoulder, and a permanent flat spot on his head where his skull was allegedly crushed. (Compl. at 3; Resp. Summ. J. at 2.) It is further undisputed that the plaintiff was immediately seen by a nurse at the OCDC. *Id*.

The plaintiff claims, however, that the nurse placed the plaintiff in a clavicle strap, which he contends is used for collarbone breaks and not to immobilize a shoulder. (Pl. Resp. Summ. J. at 3.) The plaintiff admits that he was taken to Oconee Memorial Hospital, the following day, for an MRI. (Pl. Resp. Summ. J. at 3.) The plaintiff, however, claims that he was not given any additional medical care and that he was not permitted to communicate with anyone regarding his injuries as part of a cover-up.

The defendants all contend that they are entitled to summary judgment because the plaintiff has failed to establish they were deliberately indifferent the plaintiff's concerns. The undersigned agrees.

The Eighth and Fourteenth Amendments require the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.[1] *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn,* 896 F.2d 848 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id*. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *See Estelle*, 429 U.S. at 104; *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). "A medical need is

---

[1] The court notes that the plaintiff was a pretrial detainee at the time of the alleged constitutional violations. Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (citing *Estelle*, 429 U.S. 97).

6

'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("The affidavits submitted to the District Court reflect that Russell was under constant medical supervision from the time of his arrival at Botetourt. Questions of medical judgment are not subject to judicial review.").

The defendants have brought forward the following evidence. The plaintiff was seen by Alan H. Van Heusen, a registered nurse, on the February 20, 2008, the day of the assault. (Van Heusen Aff. ¶ 2.) The plaintiff's jaw and shoulder were x-rayed that same day by Dr. Ted Booker. *Id*. X-rays showed that both the jaw and shoulder were

7

within normal limits and showed no fractures. *Id*. Dr. Booker ordered an MRI and placed the plaintiff's arm in a sling. Id. ¶ 3.

An MRI was done the following day, February 21, 2008. The MRI revealed possible muscular strain. *Id*. Nurse Van Heusen requested the MRI results on March 24, 2008. *Id*. ¶ 4. Van Heusen states that "Dr. Booker referred the Plaintiff to Blue Ridge Orthopedic." *Id*. In his affidavit, Van Heusen does not identify the date when Dr. Booker first made the referral nor can the Court identify in the record when the referral was made.

On April 4, 2008, the plaintiff was seen by Dr. Douglas Reeves at Blue Ridge Orthopedic. *Id*. ¶ 5. Dr. Reeves reviewed the MRI and placed the plaintiff's shoulder in an immobilizer. *Id*. Dr. Reeves suggested a referral to a surgeon at Blue Ridge Orthopedic. *Id*. The plaintiff was apparently kept in the immobilizer until he left OCDC, on May 6, 2008, prior to being seen by a surgeon. *Id*. ¶ 6.

The test for deliberate indifference has two parts. First, the deprivation of medical care must be sufficiently serious (objective component) and second, there must exist a culpable state of mind (subjective component). *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)*; Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

To the Court, the matter is a close call. At this juncture, it seems that issues of fact exist as to the subjective component. While the defendants were certainly responsive after the initial assault, there does appear to be an unexplained delay in time between the MRI and when the plaintiff was actually immobilized and ultimately seen by

8

Dr. Reeves, upon referral by Dr. Booker. The injury was suffered February 20 and the plaintiff was not seen for his referral until April 4 (Van Heusen ¶ 5). In fact, Van Heusen admits that he did not even request the results of the MRI until March 24, a month after the initial assault. *Id*. ¶ 4. The reason for the delay is not clear from the record. The defendants have not directed the Court to any evidence of when Dr. Booker referred the plaintiff to Blue Ridge Orthopedic. While the plaintiff has not submitted any affirmative evidence of the defendants knowing refusal to continue with prescribed medical care, the medical records evidence numerous complaints of pain (Van Heusen Aff., Ex. B) and, as discussed, the defendants conceded a substantial and unexplained delay in treatment. It is possible that a jury might conclude from this evidence that the defendants were being consciously indifferent.

Even still, the Court believes the claim must fail. Namely, the plaintiff has not established in any respect the objective element of his claim. While the injuries alleged certainly qualify as "serious," the plaintiff has not shown any injury caused by the delay in the medical treatment. *See Turner v. Kight*, 121 Fed. Appx. 9, 13-14 (4th Cir. 2005) (finding no evidence that "the failure to provide Turner with medical attention resulted in substantial injury"). Delay in the receipt of medical care only constitutes deliberate indifference where the plaintiff can show that the delay, itself, caused substantial harm. *See Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995), *abrogation on other grounds recognized by Reece v. Groose*, 60 F.3d 487 (8th Cir.1995); *Mendoza v.*

*Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993); *Wynn v. Mundo*, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2005).

The plaintiff has not submitted any evidence, or even summarily alleged, that he suffered any additional loss or injury as a result of any delay in the treatment. He does not claim nor has he produced any evidence that delaying treatment after he was initially seen and treated caused any substantial harm or the need for any other medical procedures that would not have already been required as a result of the injuries sustained in the assault. (See Pl. Resp. Summ. J. at 2-6.)  Even to the extent the plaintiff experienced some additional pain attributable to the delay in treatment, which he has not attempted to describe by way of affidavit or otherwise, there is no evidence of record that the pain itself is of the kind that is repugnant to the conscience of mankind or anything more than a *de minimis*, and therefore, unactionable injury. *See Norman v. Taylor*, 25 F.3d 1259, 1264 n.4 (4th Cir. 1994). He does not contend that he suffered a new injury, exacerbated an old one, or needed additional surgery or treatment as a result. Frankly, in this lawsuit, he has not even complained regarding any pain.

As stated, the plaintiff's deliberate indifference claim rests in part on his contention that a clavicle strap was used when a shoulder immobilizer was necessary. But the Constitution does not guarantee a prisoner receive the treatment of his choice. *See Jackson*, 846 F.2d at 817. Nor does mere negligence, in the treatment provided, give rise to a constitutional claim. *See Miltier,* 896 F.2d at 851. The nurse's use of the clavicle strap was not indifference. It may have not been what the plaintiff wanted or it

may even have been negligence or malpractice because it was the wrong treatment under the circumstances. What the plaintiff has not made any effort to prove is how it could be construed as *indifference*. The plaintiff has not produced any evidence to demonstrate how the clavicle strap failed to meet his medical needs or how it might have aggravated them. He simply and rotely contends that this was the wrong course of treatment. The plaintiff is not qualified to make such a conclusion and has submitted no evidence in support.

Accordingly, the plaintiff's claim for deliberate indifference must be dismissed because he has not created any issue of fact as to the objective element of his claim. The defendants were affirmatively attentive to his medical needs initially. To the extent there was any subsequent and unjustified delay in additional treatment, the plaintiff has not produced any evidence of additional and substantial injury that was caused by such delay.

## II.     Denial of Access to the Courts

The plaintiff next contends that he was denied meaningful access to the courts insofar as the Oconee County Detention Center has no law library. The defendants concede there is no library at the detention facility. The Oconee County Detention Center, however, only houses pre-trial detainees and inmates who have been sentenced to 90 days or less. The defendants represent that "[d]ue to a lack of funds and the length of time person are incarcerated at [the] facility, [they] do not have a law library . . . ." *Id.* ¶ 11.

The right of access to the courts is protected by Due Process and Equal Protection Clauses, *Murray v. Giarratano*, 492 U.S. 1, 11 n.6, (1989), and requires that prisoners be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). The Sixth Amendment "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828.

But the right to a law library is not absolute. Critically, it "may be that a local jail designed to accommodate inmates for relatively short periods is under no obligation to provide access to the courts." *Strickler v. Waters*, 989 F2d 1375, 1385 (4th Cir. 1993). "A local facility need not provide the same resources, much less the same quality or extent of resources, as must a state facility, because the expectation is that its occupants will be confined there only briefly and that they will have access to more extensive resources upon arrival at a state correctional facility." *Id*. at 1386; *see Cruz v. Hauck*, 515 F.2d 322, 333 (5th Cir.1975) ("[I]n determining whether all inmates have adequate access to the courts, the district court need not consider those inmates whose confinement is of a very temporary nature or for purposes of transfer to other institutions").

While he has summarily alleged that a lack of access to a library has prevented him from pleading other claims, he has not indicated what other kinds of actions he might have pled. Moreover, his pleadings in this case have been substantially

12

competent. Ultimately, the short-term nature of the facility involved leads this Court to conclude that no violation occurred. *Strickler*, 989 F2d at 1385. *But cf. Williams v. Leek*, 584 F.2d 1336, 1340 (4th Cir. 1978) ("[M]isdemeanants serving sentences of up to 12 months in local jails should not be left wholly without resources to prosecute potentially valid habeas claims or claims challenging the conditions of confinement or the adequacy of medical care.") There is no evidence that he was at the facility longer than approximately 90 days.

While he claims that he was "prevented from representing himself *pro se* in his criminal proceedings," (Pl. Resp. Summ. J. at 4) he has not alleged or presented evidence as to (1) when the criminal proceedings occurred; (2) whether or not they were conducted during his brief incarceration at the OCDC; (3) the outcome of his criminal trial; or (4) what defenses he could have argued that would have produced a different result. The plaintiff has produced no evidence of any injury suffered from his alleged denial of access claim.

**CONCLUSION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment [Doc. 32] should be GRANTED and the plaintiff's claims dismissed *with prejudice*.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>
United States Magistrate Judge

March 17, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

15